No. 16,500.

SPOSATO *v.* HEGGS ET AL.

(233 P. [2d] 385)

Decided May 21, 1951.   Rehearing denied June 25, 1951.

Mr. HOWARD ROEPNACK, for plaintiff in error.

Mr. F. W. HARDING, ONALEE BROWN, for defendants in error.

*In Department.*

MR.. JUSTICE HOLLAND delivered the opinion of the court.

THE writ of error issued in this case is for review of a judgment for $750 against plaintiffs in error Helen Sposato and William Thompson, for alleged damages for false representations concerning the sale of a small truck and delivery business owned and operated by Sposato, Thompson being one of the salesmen employed by A. R. Swain and Company, a business-chance operator. Swain, and Swain and Company were dismissed from the case.

Emma Heggs and Chesley Heggs, her son, defendants in error, were the purchasers, and about two weeks after August 3, 1948, the date of the consummation of the sale and purchase, they elected to affirm the sale and file this action for damages in the sum of $2,500 resulting from false representations allegedly made by Sposato and Thompson. Various motions were separately filed by defendants Sposato and Thompson; and separate answers were filed in due course denying the representations; denying damage, and alleging that plaintiffs have waived any right to an action for damages. The case was tried to a jury and the above-mentioned judgment was entered on its verdict against the defendants Sposato and Thompson. Motion for new trial was filed and overruled. Alfred R. Swain, doing business as A. R. Swain and Company, and A. M. Pember were also joined as defendants; however, after dismissal as to them, they no longer appear in the separate records before us. On one record of the trial court, we have two separate writs of error one each, for Sposato and Thompson. This opinion is directed to No. 16,500, being Helen Sposato, plaintiff in error v. Emma Heggs and Chesley Heggs, defendants in error.

Sposato, through counsel, specified sixteen points for reversal, the substance of which is error in giving and refusing certain instructions and in permitting plaintiffs to amend their complaint during the course of the trial without granting defendant Sposato the opportunity to prepare for the new cause of action introduced by the amendment; further, that the weight of the evidence is against the verdict; and that the court erred in refusing to direct a verdict in Sposato's favor at the conclusion of the trial.

The allegations of the original complaint are in effect that, during the month of July 1948, defendant Swain and Company showed plaintiffs a small delivery service business located at 2436 Larimer street, together with an International truck and certain office equipment that was then and there owned by defendant Sposato; that at the time Swain, individually and by his employees Pember and Thompson, represented to plaintiffs that the business had four or five good accounts which had been, and were then and there, paying the owner of said business the sum of $1,200 per year; that the owner of the property next door provided sufficient amount of business each month to pay the rent on the premises occupied by defendant Sposato; that plaintiffs believed the representations, relied upon them, and entered into a written contract for the purchase of the business; that immediately prior to the signing of the contract, defendant Sposato stated that a Mr. Stevens had offered her $1,100 for the International truck, when in truth and in fact no such offer ever was made; that such representations by defendant Sposato constituted a false inducement to plaintiffs in signing the contract; that the representations made by Swain and his employees, Pember and Thompson, and Sposato were false, and known by them to be false; but were made to plaintiffs with the intention that they rely thereon, which they did to their damage in the sum of $2,500.

The amendment to the complaint, allowed during the

proceedings of the trial over the objection of counsel for Sposato, was as follows: "6-a. That said representations were made in the presence and hearing of Defendant Helen Sposato and Defendant Helen Sposato cooperated and conspired to defraud these plaintiffs by remaining silent when said representations were made as aforesaid."

There was a failure on the part of plaintiffs to prove that Sposato did not receive an offer of $1,100 for the truck, or that the truck was not worth $1,100. On motion, the court dismissed this part of the complaint, leaving only the cause of action against Sposato as set out in the amendment.

The evidence shows that in response to an advertisement concerning a bakery, made by Swain and Company, plaintiff Mrs. Heggs and her daughter Violet, on Saturday, July 31, 1948, went to the office of Swain and Company in response to the advertisement and there met defendant Thompson. On account of the number of people, Thompson could not provide transportation in his coupe and a larger car belonging to a Mr. Lentz was used, and Mr. Lentz drove all of them to inspect the bakery. Plaintiffs were not interested in the bakery and they then went to a place on North Federal to inspect a chicken-raising business, and again were not interested. On the way back to Swain's office, Thompson mentioned the business of Sposato and plaintiffs claim that he said the business had three or four accounts bringing in a thousand or more dollars *a year*. This was denied by Thompson. Sposato was not present, because this was before they had reached her place of business. Sposato's delivery service was on the ground floor of a building at 2436 Larimer street, into which the trucks backed, and when they arrived, the truck involved in this transaction was in the building. The office of the business was completely enclosed and north of where the truck stood. Plaintiff Mrs. Heggs testified that Thompson there made the statement in the presence of

Mr. Lentz and her daughter, that the business was taking in enough from the service next door to more than pay the rent; that at that time, the representations were made out in the building and Mrs. Sposato was in the office; and that the conversation took place while they were between the truck and the office door; that she did not notice what Sposato was doing in her office and did not know whether she was listening to the conversation or not; and that she had no direct conversation with Sposato that morning.

Plaintiff's daughter, Violet Heggs, testified that she had no conversation relative to the business other than what she heard in the car before reaching the place of business. She further testified that after they were in the Sposato office awhile, she and her mother called Chesley Heggs, a son and brother, and went up to get him; that when he arrived he apparently was interested in the truck; he started the motor and stated, "It's a nice, clean, little truck."

Chesley Heggs testified that the conversation concerning the amount of business that was transacted was had in the back of the place of business; that Thompson, Lentz, Mrs. Sposato, his mother and sister were present; he further testified that Mrs. Sposato made no representations to him concerning the business, or any statements whatever; that when the statements were made about there being three or four accounts, *one* of them worth $1,200 a year, they were at about the middle of the building and Mrs. Sposato was standing there and she said nothing.

At that time, $250 was paid by plaintiffs in closing the deal, the total purchase price being $1,750. This was on Saturday morning just before closing time of the banks. The Monday following was a holiday in observance of Colorado Day.

Mr. Swain testified that he and a Mr. Pember were at the place of business in question on Monday afternoon for about fifteen minutes to make an appraisal of the

property involved relative to making the loan, and to examine a Chevrolet automobile belonging to Chesley Heggs, which was to be used as additional security; that at that time, they met Mrs. Heggs, and either that afternoon or Tuesday morning, she and Chesley obtained plaintiff's Exhibit F, which is a record book of the delivery service and which had been retained by them up to the time of trial. Defendants claim that plaintiffs, in possession of this book, could easily have determined the amount of the delivery business. There is a dispute about whether or not a ledger was available to plaintiffs; however, some book was provided from which Mrs. Heggs copied a list of the business customers.

The evidence further shows that plaintiffs took possession on Tuesday morning; that Chesley Heggs was there all day, and Mrs. Heggs was there except for the time she went to the office of Swain and Company to make an additional payment of $250 on account of her contract. On Tuesday, there was one delivery and Wednesday, one delivery. On Wednesday morning, prior to the time of the final closing of the deal, Mrs. Sposato testified, that she informed Mrs. Heggs that she did not have the next door Stevens' account and his name was not on the list furnished plaintiffs. Mrs. Sposato, according to agreement, spent some of her time for several days with plaintiffs after they took over the business, and on Thursday, following the closing of the deal, a conversation between Sposato and Mrs. Heggs concerning the amount Mrs. Sposato was to receive seems to have precipitated all of the difficulties and thereupon, plaintiffs tried to obtain a G.I. loan to take the deal out of the hands of Mr. Swain. Mrs. Heggs testified that defendants had all the accounts that they represented to her; that she did not receive any accounts that were paying $1,000 or $1,200 a year; and as to the Stevens' account, next door, she went over and asked them about their business and they said they had trucks of their own. It is in evidence that on Wednesday afternoon

before closing the deal, Swain asked plaintiffs if they were satisfied, and if not, they could withdraw from the deal. The record discloses no offer to return the business or equipment or demand for a return of their money, but that they kept the business as well as the equipment, which had a value of approximately $1,200, according to plaintiffs' testimony, and they received a list of customers about which there is a total absence of any evidence as to the value over a year's period of time.

It is undisputed that plaintiffs operated the business at its then location about one month, and on September 7, moved it to their home, at which time Chesley Heggs accepted full-time employment from one of the listed customers, The Bacon Electric Company, at eight dollars per day in the warehouse, and refused acceptance of any outside delivery business. He testified that if calls came in from any other concerns, his mother would call him where he was employed, but he was never in a position to go out and pick up the delivery.

Over objections, plaintiff Mrs. Heggs was permitted to testify she thought her damages were $2,000, based on lost earnings and Chesley Heggs, her son, was permitted to testify that he lost $2,200 by reason of an $1,800 expense from the $4,000 they had told him he would make during the first year.

█ Plaintiffs are in the position of having bought a business with full opportunity to make a full investigation of the property they were about to purchase, with the means of knowledge readily at hand and available to them; retaining all of the equipment, having a clear value of approximately $1,200; operating the business for only a month at its then location, and within that time virtually abandoning the business and accepting employment from one of the customers, and then, claiming a loss of profits extending over a period of eleven months. Because the business did not disclose reasonable profits within the first thirty days is no proof that if it had been carefully conducted, it would not have returned them

what plaintiffs claim was represented to them. The record is wholly silent as to any proof of value of the business aside from the equipment. The court properly instructed the jury that "The measure of damages in this case is the difference between the actual value of the business at the time of its purchase and what its value would have been had the representations complained of been true, not to exceed the sum of $2,500." If we are to believe plaintiffs' testimony, then the business, according to the representations, would have been worth $4,000 or better per year. There is nothing in the testimony to show that if the business had not been abandoned, but had been diligently operated that it might have produced that amount or more. It is difficult to understand how the jury could arrive at any damage when there was no showing as to the value of the business when purchased, which had an admitted value of $1,200 so far as equipment was concerned. The jury was called upon to take the value of the business aside from the equipment as proven, and find the difference between that figure and the figure it was represented to be worth. There was nothing in the record to form a basis for the jury's calculation. Neither is there anything in the record that definitely establishes a representation that there were three or four accounts, each worth a thousand to twelve hundred dollars a year. The gist of the testimony is to the effect that there were three or four accounts bringing in a thousand or twelve hundred dollars a year.

■ ■ Plaintiffs elected to affirm the purchase agreement, but they did not continue to carry on, which would have been the only means of determining whether or not they had sustained a loss. Had they continued to operate the business, their methods might have been lax and a poor return resulting; on the other hand, diligence and industry might have shown a gain instead of loss; therefore, after full knowledge of the truth respecting the business they had acquired, if they elected to retain all

benefits therefrom and abandon the business, which would not operate itself, then they are in no position to maintain an action in damages. Further, "even if a representation is fraudulent and of a past or existing fact, and the party to whom it is addressed, acts upon it, an action of deceit will not lie, unless damage has resulted." This was the language of the late Justice Campbell in *Hart v. Zaitz,* 72 Colo. 315, 211 Pac. 391.

■ Plaintiffs did not avail themselves of the means and opportunities for becoming acquainted with either the character or the value of the business, and when they tested a year's value by only one month's trial, they cannot now be heard to say that they were deceived by the representations.

It is definitely clear that plaintiffs wholly failed to establish any actionable false representation against defendant Sposato, and what we have herein said, denies them the right to recover from defendant Thompson under the circumstances. The motion for a directed verdict in favor of each of the defendants should have been granted.

The judgment is reversed.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE HAYS concur.