**WESTERN CITIES BROADCASTING, INC., Plaintiff–Appellee and Cross–Appellant,**

v.

**William J. SCHUELLER d/b/a Eldorado Communications, Defendant–Appellant and Cross–Appellee.**

Nos. 89CA1590, 89CA1863.

Colorado Court of Appeals, Div. V.

Oct. 24, 1991.

Rehearing Denied Nov. 29, 1991.

Certiorari Granted June 8, 1992.

Lance Astrella, T.R. Rice, Denver, for plaintiff-appellee and cross-appellant.

Cantrick and Rees, P.C., David K. Rees, Joel W. Cantrick, Denver, for defendant-appellant and cross-appellee.

Opinion by Judge HUME.

Defendant, William J. Schueller d/b/a Eldorado Communications, appeals a judgment entered in favor of plaintiff, Western Cities Broadcasting, Inc. (WCBI), on claims of fraud and negligent misrepresentation. WCBI cross-appeals from those portions of the judgment in favor of Schueller on his counterclaims for breach of a lease contract, for restitution of the leased premises, and for attorney fees. We affirm in part, reverse in part, and remand with directions.

WCBI is the owner and operator of radio station KQKS–FM, and Schueller is the owner-operator of a telecommunications site on Eldorado mountain in Jefferson County, Colorado. In January 1987, the parties entered into a written lease agreement authorizing WCBI's use of space in a communications building and on a telecommunications antenna tower located at the Eldorado site for broadcasting KQKS–FM's radio signal.

Among other things, WCBI agreed to design, construct, and install a multiple systems antenna (MSA) on the transmission tower within the first eight months of the lease term. It also agreed to pay rental at the rate of $2500 per month for the first eight months of the 20–year lease term or until the MSA was installed, whichever first occurred, and thereafter to pay a $3500 monthly rental fee. WCBI further agreed to conduct its broadcasting operations so as to minimize interference with the communications signals of other site · users and to cause removal of trash it generated at the site on the same day it was discarded.

In July 1988, Schueller issued and served a three-day notice and demand for possession of the leased premises, asserting that WCBI had failed to purchase and install the MSA; that it had caused and failed to remedy interference with the communications signals of other users at the site; and that it had failed to remove trash from the site. Upon being served with that notice, WCBI filed an action in the district court, seeking a determination of the parties' rights under the lease agreement and an injunction against the impending eviction.

Schueller filed a forcible entry and detainer (FED) action in the county court seeking possession of the leased premises, costs, and attorney fees. In response to the FED action, WCBI filed a complaint in district court pursuant to C.R.C.P. 313(b)(1) asserting claims which were proper counterclaims in that action but which exceeded the jurisdictional limit of the county court. Schueller then filed an answer to WCBI's complaint in the district court, in which he asserted various counterclaims. All three cases were subsequently consolidated in the district court with some issues being tried to a jury and others reserved for determination by the court.

WCBI asserted at trial that Schueller had made three false representations inducing it to enter the lease agreement: (1) that Schueller owned the antenna tower located on his land; (2) that the tower was designed and constructed with sufficient strength to support an MSA as contemplated by the lease; and (3) that if WCBI placed its temporary antenna on the tower in a location designated by Schueller, its broadcast signal would not interfere with

the signals of other users. Fraud claims were premised upon each of the first two asserted representations and negligent misrepresentation claims were based on all three of the alleged statements.

The jury returned verdicts in favor of WCBI on its claims for fraud and negligent misrepresentation and in favor of Schueller on his counterclaim for breach of contract. The jury assessed $2,740,000 actual and $1 million punitive damages in its fraud verdict plus $2,743,500 ($4,650,000 reduced by 41% contributory negligence) in its negligent misrepresentation verdict against Schueller. It also assessed $400,000 against WCBI on Schueller's counterclaim for breach of contract.

At a later hearing, the trial court concluded that the jury's verdicts for fraud and negligent misrepresentation were duplicative and entered judgment in favor of WCBI for $2,740,000 actual and $1 million punitive damages. The court also entered judgment on the jury verdict in favor of Schueller for $400,000 on his counterclaim. Additionally, the court found that WCBI had breached the lease agreement and entered judgment in favor of Schueller for restitution of the leased premises. Subsequently, after yet another hearing, the court also entered judgment awarding Schueller $150,000 for attorney fees.

Schueller appeals and WCBI cross-appeals from the judgment entered after the first post-trial hearing. WCBI also filed a separate appeal from the subsequent judgment for attorney fees which has now been consolidated with its original cross-appeal.

## I.

Schueller contends that the trial court erred in submitting WCBI's claims for fraud and negligent misrepresentation to the jury because the evidence was legally insufficient to support verdicts or judgments on those claims. We agree.

## A.

■ One who suffers injury or loss by being fraudulently induced to enter into a contract may affirm the contractual agreement and seek recovery in tort for damages he suffered as a result of the fraudulent misrepresentations. Such damages may include the value of the loss of the benefit of the claimant's bargain, *i.e.*, the difference between the value of benefits actually received under the contract and the value such benefits would have had if the false representations had been true. *Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985).

■ In order to prevail on a claim for fraud, one must establish: (1) a false representation concerning a material existing fact; (2) knowledge on the part of the one making the representation of its falsity; (3) ignorance of its falsity on the part of the one to whom the representation was made; (4) an intention by the person making the representation that it be acted upon; and (5) action on the representation resulting in damage to the claimant. *Concord Realty Co. v. Continental Funding Corp.*, 776 P.2d 1114 (Colo.1989).

■ Actual damage is an essential element of a fraud claim. *Sposato v. Heggs*, 123 Colo. 553, 233 P.2d 385 (1951). And, in order to recover benefit-of-bargain damages, a fraud claimant must prove both the value of the consideration he actually received under the fraudulently induced contract and the value that consideration would have had if the representations had been true. *Farmer v. Norm "Fair Trade" Stamp, Inc.*, 164 Colo. 156, 433 P.2d 490 (1967).

■ A party is required to prove the fact of damages by a preponderance of the evidence, and recovery should not be barred because the amount of loss cannot be established with mathematical certainty. *Riggs v. McMurtry*, 157 Colo. 33, 400 P.2d 916 (1965). However, in proving damages, a claimant must provide a reasonable basis for computation so as to enable the factfinder to arrive at a fair approximation of the loss sustained. *Tull v. Gundersons, Inc.*, 709 P.2d 940 (Colo.1985).

Here, over Schueller's objection, WCBI introduced expert opinion testimony from an econometrician as to a range of values

an FM radio station operating at full power in the Denver market might have. That opinion testimony was based upon the expert's use of six "approaches" to valuation.

Five of the six "approaches" rely largely upon estimates or reports appearing in *Duncan's Radio Market Guide* or other trade publications. The inadequacy of these approaches is illustrated by the fact that the total annual advertising revenue figure for Denver set out in *Duncan's* is expressly stated to be an estimate. Similarly, the "nationally reported" sales prices, annual profits, and sales price to profit margin ratios relied upon by the expert were admittedly unverified data.

The sixth "approach" consisted of the expert's averaging of purchase prices paid for other Denver radio stations during a four-year period. Evidence of sale prices of other businesses has only marginal probative value as to the value of KQKS. It is even more marginal and speculative as to the value of the leasehold in question here.

While it may be true that such statistical econometric projections are commonly considered by lenders and purchasers in assessing whether to risk investment capital, we are not persuaded that such projections, in themselves, are sufficiently reliable to provide a proper basis for assessment of damages to a particular business. Indeed, the breadth of the range of the expert's projected values for a hypothetical radio station "similar" to KQKS (between $9.3 million and $17.8 million) is itself suggestive of the speculative nature of the evidence.

Moreover, evidence of the projected value of a radio station is even less relevant if, as here, it is offered to prove the value of the leasehold. While the utility of the leasehold could well affect the value of the radio station, no evidentiary basis was provided by which the fact-finder could derive the value of the leasehold from the projected value of the radio station.

In addition, WCBI's expert opined that, since KQKS failed to generate a profit while operating at reduced power under the lease, it was unsalable and therefore

valueless, thus intimating that the leasehold as conveyed was also valueless. Once again, this opinion equates the hypothetical lack of value of the radio station with the value of the leasehold without establishing an evidentiary nexus for the equation.

In our view, the evidence was insufficiently certain or reliable, as a matter of law, to enable the trier of fact to arrive at a fair approximation of the value of the leasehold either as it was represented or as it was conveyed by Schueller under the terms of the lease agreement. *See Neiheisel v. Malone*, 150 Colo. 586, 375 P.2d 197 (1962). Thus, we conclude that the trial court erred in admitting the proffered evidence and in refusing to grant Schueller's motion for directed verdict and for judgment notwithstanding the verdict as to the fraud claim.

### B.

In *First National Bank v. Collins*, 44 Colo.App. 228, 616 P.2d 154 (1980), we adopted Restatement (Second) of Torts § 552 (1976) in recognizing negligent misrepresentation as an actionable claim in Colorado. *See also Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69 (Colo.1991). Subsequently, in *Robinson v. Poudre Valley Federal Credit Union*, 654 P.2d 861 (Colo.App.1982), we also adopted Restatement (Second) of Torts § 552B(1) as the rule governing awards of damages for such claims. Under *Robinson*, damages for negligent misrepresentation may include the difference between the value of what the claimant has received in the transaction and its purchase price or other value given for it, plus other pecuniary loss suffered as a result of claimant's reliance upon the representation.

Here, as noted above, WCBI did not present legally sufficient evidence to support any rational determination of the value of the leasehold it actually received under the agreement with Schueller. Nor did it offer evidence as to any other quantifiable monetary costs, expenses, or losses it incurred in reliance upon Schueller's representations. The only evidence offered as proof of damages was the expert's opinion

based upon the value of a hypothetical radio station broadcasting at full power in the Denver market and his estimate of the profit that such a station might expect based upon the average ratio between profits and sales prices as "nationally reported" but unverified.

Lost profits, if adequately proven, may support an award of consequential damages. *See Tull v. Gundersons, Inc., supra.* However, evidence of lost profit must not be speculative, remote, imaginary, or impossible of ascertainment. *Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960).

Here, there was no history of KQKS' prior profitability. Indeed, the only evidence based upon the station's past performance was that it had never operated at a profit under its present ownership.

We thus conclude that the issue of negligent misrepresentation should not have been submitted to the jury and that Schueller's motion for directed verdict and judgment notwithstanding the verdict should have been granted.

### C.

Since we have concluded that the verdicts awarding actual damages for fraud and negligent misrepresentation are not supported by legally sufficient evidence, it necessarily follows that the verdict and judgment awarding exemplary damages must also be vacated. Section 13–21–102, C.R.S. (1987 Repl.Vol. 6A); *Leo Payne Pontiac, Inc. v. Ratliff,* 29 Colo.App. 386, 486 P.2d 477 (1971).

Accordingly, we conclude that the portions of the judgment awarding actual and punitive damages to WCBI for misrepresentation must be vacated. In light of this disposition, we do not address Schueller's other contentions of error.

### II.

### A.

In its cross-appeal, WCBI first contends that the trial court erred in determining that Schueller complied with the requirements of § 13–40–101, et seq., C.R.S. (1987 Repl.Vol. 6A) (the FED statute) by declaring the lease terminated only two days after serving a notice to quit or conform with the lease requirements. We disagree.

We have construed the notice requirement of § 13–40–104(1)(d) and (e), C.R.S. (1987 Repl.Vol. 6A) to require the passage of at least three days after serving demand on a tenant before the commencement of an unlawful detainer action. *See Magliocco v. Olson,* 762 P.2d 681 (Colo.App.1987).

Here, WCBI responded to service of Schueller's demand notice by filing a complaint for declaratory and injunctive relief on the following day. Schueller, on the other hand, did not file an unlawful detainer action until ten days after his demand notice was served upon WCBI.

Thus, we perceive no error in the trial court's determination that Schueller complied with the statutory notice provision.

### B.

WCBI next contends that Schueller waived his right to complain of WCBI's breach of the lease contract by accepting rent after he became aware of the alleged lease violation. We disagree.

Waiver is the voluntary relinquishment of a known right. *Ewing v. Colorado Farm Mutual Casualty Co.,* 133 Colo. 447, 296 P.2d 1040 (1956). Waiver of a lease provision may be inferred if a party engages in conduct manifesting his intention to relinquish the right, but the conduct alleged as a waiver must be free from ambiguity so as to manifest clearly such an intention. *Magliocco v. Olson, supra.*

Here, Schueller's conduct, as reflected by evidence in the record, demonstrates that while he was aware of WCBI's failure to comply with the lease provisions, he continued to attempt to resolve those problems by allowing WCBI to remedy the interference caused to other tower users by its transmission operations. Moreover, although WCBI had an option to cancel the lease in the event that permanent FCC

licensing to operate from the site could not be obtained, it elected to remain on the leased premises and enjoy the benefits of transmitting at reduced power from that location. It did not seek to cancel the lease or to rescind it for fraud at any time.

Because WCBI chose to remain in possession under the lease and ultimately elected to enforce the lease terms by suing for damages, it was required to perform its own obligations thereunder. WCBI cannot accept the benefits of an allegedly fraudulently induced contract without also assuming the burdens imposed upon it by that same contract. *See Destination Travel, Inc. v. McElhanon,* 799 P.2d 454 (Colo.App. 1990).

Thus, here, the evidence demonstrates that both parties intended that the contract remain in full force despite WCBI's failure to perform. In an effort to resolve their mutual problems, Schueller was willing to allow a reasonable period of time within which WCBI could attempt to comply with the contract terms, and WCBI was willing to remain in possession under the lease, pay the rental, and install the MSA for the mutual benefit of the parties.

Under these circumstances, whether Schueller's acceptance of monthly rental payments after WCBI's initial breach of the lease was intended as a waiver of his right to enforce the lease terms constituted a question of fact to be determined by the trial court. There is evidence to support the trial court's ruling on that factual issue, and thus, we will not disturb it on appeal. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

### C.

WCBI also contends that the trial court erred in exercising its jurisdiction to determine whether its signal had "interfered" with those of other tower users. Specifically, it claims that the FCC has exclusive pre-emptive authority to make such determinations. We disagree.

■■■■ While the FCC does have exclusive authority to police its licensees' compliance with its regulations, *see In re 960 Radio, Inc.,* F.C.C. No. 85–578 (Nov. 4, 1985), that exclusive regulatory authority does not preclude state courts from enforcing private contracts which prohibit a licensee's interference with communications signals of others. *See Minnesota–Iowa Television Co. v. Watonwan T.V. Improvement Ass'n,* 294 N.W.2d 297 (Minn.1980); *Themy v. Seagull Enterprises, Inc.,* 595 P.2d 526 (Utah 1979).

Here, there was substantial evidence supporting Schueller's claim that, in violation of the conditions of the lease, WCBI had failed to remedy detrimental interference it had caused to other tower users' signals over a protracted period. The trial court did not purport to usurp the FCC's authority to police its regulations; rather, it sought only to enforce the terms of the parties' private agreement concerning radio interference. We perceive no error in that action.

### D.

■■■■ Finally WCBI contends that the trial court erred in awarding attorney fees to Schueller as the prevailing party in the FED action and under a provision in the lease.

Here, Schueller was the only prevailing party on the FED and contract claims, and the lease agreement expressly provided for an award of attorney fees in favor of Schueller for WCBI's non-compliance with its terms. Hence, we perceive no error in the court's award of attorney fees.

The remaining contentions asserted by each of the parties are either without merit or are rendered moot by our disposition of the foregoing contentions.

Those portions of the judgment in favor of Schueller on his contract, FED, and attorney fee claims are affirmed. The portions of the judgment in favor of WCBI on its claims for fraudulent and negligent misrepresentation are reversed, and the cause is remanded to the trial court with directions to vacate those portions of the judgment.

STERNBERG, C.J., and ENOCH, J.*, concur.