**CLUB MATRIX, LLC, a Colorado limited liability company, d/b/a Matrix Fitness and Spa, Plaintiff–Appellee,**

**v.**

**Craig NASSI and Beauvallon Corp., a Colorado corporation, Defendants–Appellants.**

**No. 09CA2479.**

Colorado Court of Appeals, Div. I.

July 21, 2011.

Senn Visciano Canges Rosenstein, P.C., Erich L. Bethke, James S. Bailey, Denver, Colorado, for Plaintiff–Appellee.

Schlueter, Mahoney & Ross, P.C., Jennifer K. Fischer, Denver, Colorado, for Defendant–Appellant Craig Nassi.

Secor Law, L.L.C., Lisa C. Secor, Fort Collins, Colorado, for Defendant–Appellant Beauvallon Corp.

Opinion by Judge CARPARELLI.

Defendants, Beauvallon Corp. and Craig Nassi, appeal the portion of the judgment entered against them and in favor of plaintiff,

Club Matrix, LLC, for fraudulently inducing Matrix's assignor to enter into a commercial lease, including the award of damages and prejudgment interest. We reverse.

## I. Background

In September 2003, Beauvallon leased commercial space in the Beauvallon Towers, a Denver mixed-use complex, to Lawrence L. Levy, LLC. The lease stated that Levy would use the premises to operate a health club, and included a rider in which Beauvallon granted Levy the exclusive use of 150 parking spaces for the health club's customers (the 2003 parking space rider). Levy assigned the lease to Club Matrix (the lessee) in January 2004. The lessee took possession of the space in December 2004. Between December 2004 and March 2005, Beauvallon permitted the lessee's patrons to park in spaces in the building's common use commercial parking areas, but it did not install signage indicating that 150 parking spaces were reserved for the exclusive use of the lessee's customers.

Beauvallon sold the property to Lincoln Retail Ventures, LLC,[1] in March 2005. In August 2005, although Beauvallon no longer owned the complex, the lessee sued seeking declaratory judgment regarding, among other things, Beauvallon's obligations under the lease with regard to the parking spaces. In October 2005, Lincoln sold the property to J & J Enterprise, LLC.

In January 2007, the lessee amended its complaint to add Nassi, Lincoln, and J & J as defendants. It added claims against Beauvallon and Nassi for conversion, civil theft, and civil conspiracy. It also added claims against Beauvallon, Lincoln, and J & J for breach of lease, breach of implied covenant of good faith and fair dealing, promissory estoppel, quantum meruit-unjust enrichment, and constructive eviction.

In April 2007, J & J and the lessee agreed to settle the lessee's claims under terms stat-

ed in an amended lease (the 2007 amended lease). The amendment included eleven substantive provisions, one of which obligated J & J to provide the lessee with the exclusive us of 75 parking spaces and the shared use of 75 more.[2]

In March 2008, the lessee again amended its complaint. This time it added the negligent misrepresentation and fraudulent inducement claims against Nassi, Beauvallon, and Lincoln at issue in this appeal. When the lessee filed this amended complaint, it had the exclusive use of the 75 parking spaces provided the 2007 amended lease, and sought damages for the lost value of the additional 75 exclusive use parking spaces granted in the 2003 parking space rider.

After a bench trial, the trial court found that Beauvallon had breached the lease agreement, and that Beauvallon and Nassi had fraudulently induced the lessee to enter into the 2003 lease. The court awarded the lessee damages on the fraud claim in the amount of $1,046,240, plus $462,645 in prejudgment interest.

Beauvallon and Nassi (collectively, the lessor) present two issues on appeal. The lessor first challenges the trial court's findings of fact regarding the lessee's damages, contending that the lessee did not present competent evidence of damages. It also contends that the court erred in admitting witness testimony that was not disclosed before trial. We conclude that the lessee did not provide competent evidence of its damages and, thus, failed to prove its claim.

## II. The Parking Space Claims

The lessor contends the damages award for fraudulent inducement to enter the lease was clearly erroneous because the lessee did not present competent evidence establishing damages. We agree.

1. Nassi was a principal in both Beauvallon and Lincoln.

2. The 2007 amendment also addressed, and to some extent, modified the following lease terms: the square footage of the lease premises, the lease term and rent commencement, operational expenses, and provisions regarding HVAC repairs, utilities, payment and credits under section 32 of the rider, assignability, reimbursement of costs, right to correct maintenance deficiencies, and miscellaneous other matters.

## A. The Lease Terms

The 2003 parking space rider entitled the lessee to "have reserved for its use 150 parking spaces for its customers at no charge for the first two (2) hours; $1.00 per hour shall be charged to the customer thereafter." It specified, in italics, that the parking spaces would be *"located in a designated parking area used exclusively for commercial retail parking, and shall have signage that reflects parking exclusively for [lessee's] health club."*

Under the 2007 amended lease, J & J was required to provide the lessee with the exclusive use of 75 parking spaces and 75 additional spaces designated "for the use of all retail and commercial tenants only."

## B. Damages

■ "One who suffers injury or loss by being fraudulently induced to enter into a contract may affirm the contractual agreement and seek recovery in tort for damages he suffered as a result of the fraudulent misrepresentations." *Western Cities Broadcasting, Inc. v. Schueller*, 830 P.2d 1074, 1077 (Colo.App.1991) (*Western Cities Broadcasting I*), aff'd, 849 P.2d 44 (Colo.1993) (*Western Cities Broadcasting II*). This includes "the value of the loss of the benefit of the claimant's bargain, i.e., the difference between the value of benefits actually received under the contract and the value such benefits would have had if the false representations had been true." *Western Cities Broadcasting I*, 830 P.2d at 1077; *see also Trimble v. City & County of Denver*, 697 P.2d 716 (Colo.1985). "The plaintiff has the burden of proof and 'must establish by a preponderance of the evidence that he has in fact suffered damage and that the evidence introduced provides a reasonable basis for a computation of damages.'" *Western Cities Broadcasting II*, 849 P.2d at 48; *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381 (Colo.1993). Actual damage is an essential element of such damages, and actual damage "cannot be based on mere speculation or conjecture." *Id.* (quoting *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943 (Colo.1985)).

■ Because "leases are not normally saleable items," they do not have a "readily ascertainable market value." Restatement (Second) of Property: Landlord & Tenant § 10.2(1) & cmt. b (1977). "The bargain feature most likely to be present that would give the lease a dollar value is the amount of the rent. This dollar value is its fair market value." *Id.* § 10.2 cmt. b. If a lessor defaults on a lease and the lessee terminates, the lessee has lost this fair market rental value as of the date of termination. *Id.* If the lessee continues under the lease, he or she may seek rent abatement, among other remedies. *Id.; see Bedell v. Los Zapatistas, Inc.*, 805 P.2d 1198, 1200 (Colo.App.1991) (citing Restatement § 11.1). This measure is consistent with the standard described in *Western Cities Broadcasting*. It is the difference between the fair rent of the property as represented and the fair rent of the property as provided.

In addition, when a lessor defaults on a lease of commercial property, a lessee who elects not to terminate the lease may be entitled to remedies such as (1) "reasonable additional costs of substituted premises incurred by the [lessee] as a result of the [lessor's] default while the default continues"; and (2) "loss of anticipated business profits ... which resulted from the [lessor's] default, and which the [lessor] at the time the lease was made could reasonably have foreseen would be caused by the default." Restatement (Second) of Property: Landlord & Tenant § 10.2(4), (5) (1977).

## C. The Lessee's Damages Expert

To prove its damages, the lessee presented the testimony of an expert witness who the court ruled was qualified to render opinions regarding the valuation of commercial real estate property.

The expert testified that he had not seen or reviewed the lease or valued the lessee's leasehold interest. Nonetheless, he testified that, because the lessee had been promised the exclusive use of 150 parking spaces and received the exclusive use of only 75 spaces, he had calculated the value of the exclusive use of the remaining 75 spaces it *did not* receive.

## 1. Expert's Premises

Although the expert had not reviewed the lease, he explained that he understood it "to be a 20, or 25 year term," and that this "fee-simple essentially should equate to any lease-hold interest." In response to a question on cross-examination, he agreed that the lessee's ability to exclude all others from using the spaces for a long-term period was one of the keys to his valuation. He also testified that he did not know whether the lessee had generated any income by renting the parking spaces. On these and other premises, he opined that it was appropriate to determine the fee simple value of the exclusive use of one representative parking space, and multiply that value by 75.

Relevant to the value of the shared use of the 75 parking spaces provided in the 2007 amended lease, the expert explained that he did not think one could value the shared use of a parking space, and, thus that he could not render an opinion about the value of the nonexclusive use of a representative parking space: "Without those exclusive rights that value would lie in the value of the real estate itself." As a result, the expert did not give an opinion regarding the monetary value of the shared use of 75 parking spaces that the lessee received in the amended lease.

## 2. Income Approach

To determine the fee simple value of the exclusive use of 75 parking spaces in the complex, the expert used an "income approach" to first determine the value of one parking space. He explained that the "basic theory behind the income approach is the principle of anticipation." According to the expert, "This principle states that value is created by the expectation of future benefits: it is the present worth of the rights to all prospective future benefits, tangible and intangible, attached to the real estate ownership." In this regard, the expert's report explained that he estimated that a single parking space could be rented out for $130 per month and generate a net income of $1,334 per year. He said that, after applying a nine percent capitalization rate, the fee simple market value of the exclusive use of one parking space in the building was $14,800.

The expert did not address the fact that the parking space rider granted the lessee exclusive use of the parking spaces "for its customers." Nor did he say he believed the lessee had expected to be able to rent the parking spaces to others on a monthly basis or to assign its right to the exclusive use the 75 spaces.

## D. Trial Court's Findings and Conclusions

The court found that the lessee proved fraudulent inducement, and concluded: "[The lessee was] clearly damaged by the fraudulent misrepresentations, as [the lessee] never obtained all of the promised 150 spaces. In final negotiations with successor lessor J & J, [the lessee] was able to secure only [75] of the promised spaces under certain terms of exclusivity."

The trial court concluded that the lessee's expert's opinion of value provided a reasonable basis for determining the lessee's damages caused by the loss of the exclusive use of 75 parking spaces. Based on the testimony of the lessee's expert witness and Nassi's statements to the lessee during negotiation of the lease, the court determined that the lessee's damages for the fraudulent inducement claim were $1,046,240, plus $462,645 in prejudgment interest.

The lessor contends, and we agree, that the damages award for fraudulent inducement was not supported by competent evidence, and, therefore, was clearly erroneous.

## E. Standard of Review

■ The trial court is responsible for making a reasonable finding, based on the circumstances of each case, "that would provide for a fair, equitable, and adequate award of damages." *Sonoco Prods. Co. v. Johnson*, 23 P.3d 1287, 1289 (Colo.App.2001). "The fact finder has the sole prerogative to assess the amount of damages, and its award will not be set aside unless it is manifestly and clearly erroneous." *Lawry v. Palm*, 192 P.3d 550, 565 (Colo.App.2008).

An award is clearly erroneous when there is no evidence to support it. *See Western Cities Broadcasting II*, 849 P.2d at 48–49.

### F. Analysis and Conclusions

#### 1. Expert's Opinion

■ We conclude, as a matter of law, that the lessee's expert's opinion regarding the fee simple value of the 75 parking spaces in the complex was not competent evidence of the lessee's actual damages.

The expert testified that his "income approach" fee simple valuation of the lease was "the present worth of the rights to all prospective future benefits, tangible and intangible, attached to the real estate ownership." He justified his use of this approach on his belief that the lease term was 20 or 25 years, without having read or considered whether the lease granted the lessee all future benefits, tangible and intangible, attached to owning the real estate on which the parking spaces were situated.

However, the lessee did not contend that the lessor had represented that the lessee would be able to sublease the parking spaces on a monthly basis. Nor did the lessee assert that it had planned to do so. To the contrary, the evidence indicated that the lessor had represented and agreed only that the lessee would "have reserved for its use 150 parking spaces for its customers." Thus, contrary to the expert's premise, the lease did not grant the lessee the *unrestricted* use of the parking spaces. Nor did it grant the lessee the right to use the parking spaces, individually or collectively, as monthly public parking or to assign its parking rights or sublease the spaces to a third party for that purpose. Indeed, even as to the lessee's exclusive use of the parking spaces, the lease explicitly limited the free use of the spaces to the lessee's customers to two hours, and explicitly established an hourly parking rate thereafter.

Thus, to the extent that the expert's opinion regarding the market value of an unrestricted right to use 75 parking spaces in the Beauvallon Towers might be accurate, it did not provide a reasonable basis for a computation of this lessee's anticipated future benefits under the lease as represented or executed.

Accordingly, we conclude, as a matter of law, that the expert's fee simple valuation was not competent evidence of the lessee's damages.

#### 2. Nassi's Representations of Value

The lessee's expert testified that he had also considered two e-mails Nassi sent to Levy about nineteen months *after* the lease was signed and about four months before the lessee filed suit. We reject the lessee's contention that even if its expert's opinion regarding the fee simple value of the parking spaces was not sufficient to support the damages award, Nassi's statements in the two e-mails are sufficient evidence of the lessee's damages.[3]

To the extent that the court considered the e-mails as corroboration of the expert's opinion, we have concluded that the expert's opinion was not competent evidence of the lessee's damages. Corroboration of that opinion does not transform it into competent evidence of the lessee's damages. Accordingly, the corroborative value of the e-mails, if any, is of no significance. Still further, the court admitted the e-mails for the limited purpose of showing what information the expert had considered, and not as substantive evidence. Having done so, the court could not properly consider them as substantive corroboration of the expert's opinion.

#### 3. No Other Evidence

■ The lessor argues that to prove the difference in value of the leasehold as represented and as received, lessee could have shown the difference between the rent for the exclusive use of 150 parking spaces and the rent for the exclusive use of 75 parking spaces plus shared use of an additional 75 spaces. We agree.

Indeed, as we have already discussed in section II.B., this is a common measure of

---

**3.** Contrary to the lessee's representation during oral argument, Nassi did not testify at trial regarding the value of the exclusive use of the 75 parking spaces.

damages regarding lease defaults and is consistent with the standard described in *Western Cities Broadcasting I.* Here, the lessee presented no evidence that the shared use of 75 spaces rather than the exclusive use of those spaces during the relevant period caused:

- payment of excessive rent;
- any of the lessee's customers to be unable to find a parking space in the garage;
- the lessee to have fewer patrons or to lose revenue;
- the lessee to incur expenses to pay for customer parking elsewhere;
- a reduction in the value of the lessee's business;
- the lessee's business to fail; or
- other adverse effects to the lessee's business.

### 4. Judgment Reversed

For the foregoing reasons, we conclude that the lessee presented no evidence that the lessor's false representation resulted in damages. Although a plaintiff's claims do not fail if there is uncertainty about the measure of damages, they fail if there is no evidence regarding the measure of damages. *See Western Cities Broadcasting II,* 849 P.2d at 48. Because such proof is an essential element of fraudulent inducement to contract, the judgment in favor of the lessee with regard to that claim must be reversed, and judgment entered for the lessor.

### III. Sandoval Testimony

Because we reverse the judgment regarding fraudulent inducement to contract, we need not address the lessor's contention that the lessee's witness, Ms. Sandoval, should not have been allowed to testify at trial.

### IV. Conclusion

The judgment, including the award of damages and prejudgment interest, in favor of the lessee on its claim of fraudulent inducement is reversed.

Judge TAUBMAN and Judge GABRIEL concur.