## No. 19,543.

### LEE CORDER *v.* WILLIAM C. LAWS, ET AL.
(366 P. [2d] 369)

Decided November 6, 1961.  Rehearing denied December 4, 1961.

Mr. BENTLEY M. McMULLIN, Mr. ALBERT H. JEWELL, for plaintiff in error.

Mr. FRED L. SCHWARTZ, Mr. ROBERT MEER, for defendants in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

ON or about December 30, 1957, William C. Laws, acting for himself and also for Lida Z. Laws, Robert R. Laws and Florence Laws Pierce, purchased from Lee Corder commercial property situate on South Broadway in Englewood, the purchase price for the property being $46,000. The present controversy stems from the events leading up to this transfer of real property.

The Laws subsequently brought an action against Corder charging him with fraud and deceit which allegedly induced them to purchase the subject property to their resultant damages. Corder admitted the sale of the property, but denied that he had in any way deceived the Laws.

Upon trial to a jury the trial court at the conclusion of all the evidence, after appropriate motion, directed the jury to return a verdict in favor of the Laws and submitted to the jury for its determination the one issue of damages. The jury assessed the damages in the amount of $5,200. By writ of error Corder here seeks reversal of the judgment entered on this verdict.

In his motion for a new trial, Corder suggests that the trial court committed error in some forty different ways, which may conveniently be grouped as follows: the trial court (1) erred in directing a verdict for the Laws; (2) erroneously instructed the jury on the measure of damages; and (3) erroneously excluded evidence sought to be introduced by Corder, and erroneously admitted evidence offered by the Laws.

The evidence adduced upon trial was not in conflict as to the material facts. In October 1957 Corder determined to sell the property which is the subject of this litigation and he deputized one DeCamp to be his agent in the transaction. DeCamp in a comparatively short

time succeeded in interesting the Laws in the property, which interest eventually ripened into their purchase of the property on December 30, 1957, for $46,000.

It is undisputed that Corder told DeCamp that the entire property was then under lease, and that the total monthly rental income was $725.00. Also, it was definitely established that Corder specifically advised De-Camp that the entire second floor was then under lease to a fraternal lodge at a monthly rental of $200.00, and that this lease, which was entered into on May 13, 1957, was for a term of five years. DeCamp relayed this information to William C. Laws, who handled this transaction for the Laws family.

Prior to the actual transfer of the property the Laws asked to see all leases on the various units of the property for the purpose of submitting them to their attorney for examination. Corder delivered all existing leases to William C. Laws, including the lease with the fraternal lodge which covered the entire second floor and called for monthly rent in the amount of $200.00, and by its terms was to run until May 13, 1962.

It was admitted by Corder that contrary to the terms of his written lease with the fraternal lodge, which lease he had exhibited "without comment" to William C. Laws, he had a "private understanding" with the lodge that it need pay no rent for the first six months of its tenancy. In this connection it was the intention of the lodge to remodel the second floor so as to better serve its fraternal purpose. However, this remodeling was never fully completed and in October 1957 the officers of the lodge officially advised Corder that they were financially unable to go through with their transaction. No money rentals were ever paid Corder by the Lodge. Notwithstanding the admitted knowledge of Corder that the lodge did not intend to occupy the second floor of the building and that it could not live up to its lease, he nevertheless, through his agent, advised William C. Laws that the total monthly rental income from the

property was $725.00, which included $200.00 for rental of the second floor to the lodge, and thereafter upon request had his agent deliver to the Laws the five year lease with the fraternal lodge. The evidence strongly suggests that Corder not only permitted, but actually encouraged the lodge not to move out immediately, so that there would be no intimation to would-be purchasers that the second floor was in fact unoccupied.

The Laws had no knowledge of the true nature of the relationship between Corder and the lodge, and relied upon the written lease as fully and accurately reflecting the true state of affairs.

Soon after the Laws acquired the property the fraternal lodge moved out what belongings it had in the building, and thereafter, for nearly two years the Laws tried without success to rent the second floor, but finally rented it for $160.00 per month.

Upon discovery that they had been deceived as to the rental status of the entire second floor of the building which they had just purchased, the Laws elected to affirm the transaction and thereafter promptly brought their action in fraud. In their complaint the Laws generally charged Corder with misrepresenting the monthly rental income of the subject property, and specifically alleged that Corder falsely represented that he had been and was receiving $200.00 per month for the rental of the second floor of the building, and finally that under all the circumstances, the written lease between Corder and the lodge was a "sham."

█ Such being the state of the record, the trial court committed no error in directing a verdict for the Laws on the issue of liability. 37 C.J.S. p. 448 states:

"The general rule that questions of fact are to be determined by the jury and questions of law by the court applies in an action for fraud. Thus, if there is proof as to all the essential elements of fraud, and the evidence is conflicting, the question of fraud is one of fact for the jury * * *. *On the other hand, the issue of fraud should*

*not be submitted to the jury where the facts are undisputed and are susceptible of only one reasonable conclusion* * * * *Generally, where the evidence is such that reasonable men can reach but one conclusion, the court may direct a verdict* * * * " (Emphasis supplied.)

In the instant case all of the essential elements of fraud, as enumerated in *Morrison v. Goodspeed,* 100 Colo. 470, 68 P. (2d) 458, for example, are established by the undisputed and uncontroverted facts. Such being the situation, the trial court quite properly directed a verdict in favor of the Laws.

In *Cahill v. Readon,* 85 Colo. 9, 273 Pac. 653, a factual situation was presented which is strikingly parallel to that of the instant case. There the seller of commercial property falsely represented that he (the seller) had "persons ready to rent it" at the rate of $100.00 per month. The trial court as the trier of the facts found for the seller, but on review this judgment was reversed and the trial court was directed as a matter of law to find for the purchaser, who had relied on the seller's representation that he had persons "standing in line" to rent the property. In so holding, the Court said:

"The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party * * * the means of accomplishing it are immaterial."

In the instant case Corder by his actions produced a "false impression upon the mind" of Laws to the effect that there was a lease covering the second floor of this building which was of value, when in truth it was of little or no value. Corder testified that he caused this five-year lease to be exhibited to the Laws "without comment." Under the circumstances he had a duty to "comment" and inform the Laws of the exact nature of the then existing relationship between himself and the lodge. See *Cohen v. Vivian,* 141 Colo. 443, 349 P. (2d) 366, involving an analogous but different factual situation.

■ Corder next urges that the trial court erroneously instructed the jury as to the measure of damages. The jury was instructed that the measure of damages is the difference between the actual value of the property and what its value would have been had Corder's representations been true. Corder concedes that this instruction is proper under *Otis & Co. v. Grimes,* 97 Colo. 219, 48 P. (2d) 788, but urges that we overrule that decision. *Stare decisis* suggests, however, that instead of overruling that decision we adhere to it. Recognizing that there was a split of authority, the Court in *Otis & Co. v. Grimes,* knowingly adopted the "benefit of the bargain" rule, and the fact that the Laws, some years later, sold the subject property at a profit is of no legal significance. See, also, *Herfort v. Cramer,* 7 Colo. 483, 4 Pac. 896; *Peppers v. Metzler,* 71 Colo. 234, 205 Pac. 945, and *Sposato v. Heggs,* 123 Colo. 553, 233 P. (2d) 385.

As to the claim of error based on the reception and rejection of evidence, careful examination of the record convinces us that the trial court did not commit reversible error in any of its numerous rulings on the propriety of questions sought to be propounded and the materiality of the answers thereto.

■ In short, the trial court correctly analyzed the situation and instead of shifting its responsibility to the jury it quite properly directed a verdict for the Laws. In this connection, the following language of the U. S. Supreme Court in *Patton v. Texas and Pacific Railway Co.,* 179 U.S. 658, is deemed appropriate:

"Hence it is that seldom an appellate court reverses the action of a trial court in declining to give a peremptory instruction for a verdict one way or the other. At the same time, the judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility. He has the same oppor-

tunity that jurors have for seeing the witnesses, for noting all those matters in a trial not capable of record, and when in his deliberate opinion there is no excuse for a verdict save in favor of one party, and he so rules by instructions to that effect, an appellate court will pay large respect to his judgment."

Thereafter, the jury acting under a proper instruction as to the measure of damages determined the Laws' damage to be $5,200, and there being competent evidence to support the verdict, the judgment must be affirmed.

Mr. Justice Day dissents.

Mr. Justice Frantz and Mr. Justice Pringle not participating.