## No. 20,058.

FORREST BASSFORD, ET AL., *v.* PAUL W. COOK, ET AL.

(380 P. [2d] 907)

Decided April 22, 1963.

Messrs. HIESTER, TANNER & CLANAHAN, Mr. BILL EARL TOM, for plaintiffs in error.

Mr. JOSEPH W. OPSTELTON, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

WE will refer to the parties as they appeared in the trial court where plaintiffs in error were plaintiffs and defendants in error were defendants. Plaintiffs sought rescission of an executed contract by which they had purchased a residence from the defendants. Trial to the court resulted in a judgment for the defendants and plaintiffs are here by writ of error seeking reversal.

Plaintiffs, in their complaint, alleged that (a) defendants misrepresented and concealed material existing facts in that the defendants, with knowledge that there were soil problems under their house, nonetheless informed plaintiffs that there were no soil problems and that certain cracking of the house was due to normal settling of a new home; (b) plaintiffs were ignorant

138

of the falsity of defendants' representations; (c) defendants' misrepresentations were made with the intention that plaintiffs should act upon them; and (d) the plaintiffs did rely and act on the misrepresentations made by defendants to their detriment.

█ Since the trial court found for the defendants, the scope of our review is limited to a consideration of the evidence in the light most favorable to the defendants, and every inference fairly deducible therefrom drawn in favor of the judgment. *House v. Smith,* 117 Colo. 305, 187 P. (2d) 587; *Julius Hyman and Co. v. Velsicol Corp.,* 123 Colo. 563, 233 P. (2d) 977.

Viewed from the perspective most favorable to the prevailing parties, the evidence here shows that in 1957 the defendants purchased a new home in the Holly Hills area of Arapahoe County for their personal residential use. At the time of purchase the defendants were aware of cracks located in the interior walls of the house. After they had resided in the house for some months, additional and more severe cracking occurred and an engineer specializing in building foundation problems was employed to investigate the cracking and recommend corrective measures.

The engineer found that there was some movement of the exterior bearing walls of the structure and of the foundations supporting a garage wall. The engineer recommended corrective measures consisting of jacking up the house and releveling all interior bearing walls and installing drain pipe extensions to carry roof water away from the structure's foundation. The defendants accepted this recommendation and ordered the work done. A written report stating the causes of the cracking and the corrective measures carried out was sent by the engineer to the defendants. The engineer orally advised the defendants that the movement was caused by settling and that the corrective measures undertaken by him would remedy the entire situation.

A few months after the corrective work had been

completed the defendants, then in financial difficulty, listed their home for sale. Plaintiffs had been seeking a home in the Denver area and were shown the defendants' house by a realty broker whose firm they had employed in the past and in whom they placed a great deal of confidence. They had been advised that there were soil problems in the area.

An initial investigation of the house for the purpose of examining the floor plan and design led to a second inspection for the purpose of examining the quality of the construction. At this time the plaintiffs saw the readily noticeable and in some instances rather substantial cracks in the interior walls of the house. During the second inspection of the house the plaintiffs asked of the defendants the cause of the cracking and were told that an engineer had examined the premises and had informed the defendants that the cracks were the result of settling of a new house. The defendants told the plaintiffs of the corrective measures taken as a result of the engineer's recommendation and further told them that there were minor soil conditions which required keeping water away from the foundation. The name of the engineer was given to the plaintiffs and they were offered his telephone number in the event they wished to contact the engineer.

The matter of cracking was not again discussed with the defendants, but the plaintiffs did discuss the problem with their agent, Moore, in whom they had confidence and who they believed would not let them buy a house in an area where there were bad soil conditions. Moore told them that he would make no recommendation about the soil condition but that he had sold a home adjacent to and next door to this property that had not been troubled by the soil conditions. After offers and counter offers had been submitted, plaintiffs, in June of 1958, finally purchased the house.

New cracks began to appear in the house in the fall of 1958, and in early 1959, the cracking having become

quite severe, a construction company was employed by the plaintiffs to investigate the situation. Thereafter further investigations were made by other specialists and it was determined that the cracking was due to a high moisture content soil condition and could be remedied only at large expense. Plaintiffs thereupon brought this action against defendants for damages or for recission, electing at the time of trial to proceed upon rescission based upon fraud.

From the evidence recited above, the trial court found that the defendants had not fraudulently misrepresented the soil condition, that the soil condition was patently manifested by the cracks in the house, and that the plaintiffs were put on notice of the soil condition by these cracks, by the conversations relative to the engineer's recommendation, and by the discussion concerning the keeping of water away from the foundation, and that under such circumstances the plaintiffs were not entitled to rescission.

It is the plaintiffs' contention that as a matter of law, on the basis of the evidence adduced, they were entitled to rescission. They cite as authority for this contention, *Cohen v. Vivian,* 141 Colo. 443, 349 P. (2d) 366, and *Corder v. Laws,* 148 Colo. 310, 366 P. (2d) 369. We deem neither case applicable to the situation at hand.

In *Cohen,* the trial court made a finding that the seller knew of a *latent* soil condition, which, as a matter of law, he was bound under the circumstances to communicate to the purchaser. We upheld the findings of the trial court. In *Corder,* the seller exhibited to the purchaser a lease with the intent to produce a false impression on the mind of the purchaser that it was of value when in truth he knew it was of no value.

In the instant case we have a finding by the trial court that there was no intentional fraud either by way of misrepresentation or concealment. The evidence most favorable to the defendants here leads to the inference that the sellers told the buyers everything

they knew about the soil condition and the reason for the cracks. The defendant Cook testified that the statements made by him concerning the reasons for the cracking and the soil conditions were true as far as he knew. He told the court that he believed the engineer had told him the cracks were due to settling and that the measures taken had remedied the condition. The engineer testified that he had indeed said that the cracks were due to settling. Since evidence of fraud and each of the elements thereof must be clear, precise and indubitable, *Wallick v. Eaton,* 110 Colo. 358, 134 P. (2d) 727, we cannot say as a matter of law that the court's determination that defendants did not falsely represent or conceal the facts concerning the cracks and the soil condition was error.

It is true that where one seeks rescission by reason of misrepresentation rather than damages he need not prove that the seller had knowledge of the falsity of the representations or was utterly indifferent to their truth or falsity, *Wheeler v. Dunn,* 13 Colo. 428, 22 Pac. 827; *Colorado Springs Co. v. Wight,* 44 Colo. 179, 96 Pac. 820; 23 Am. Jur. *Fraud and Deceit,* §§133, & 137, p. 927, ff; Bigelow, *The Law of Fraud,* 411, §8; 1 Black, *Rescission and Cancellation,* 299, §102 (2nd ed.); 3 Pomeroy, *Equity Jurisprudence,* 486-93, §§885-88 (5th ed.); but the person seeking rescission must establish all of the other elements of fraud and deceit, including his right to rely upon the representations made. Whether he has a right to rely on the representations is ordinarily a question of fact to be determined by the trier of fact upon the circumstances of each individual case. 24 Am. Jur. *Fraud and Deceit,* 296, p. 142, ff. Here the buyers were well aware of the soil problem in the area and saw rather substantial cracks; were advised that an engineer had been employed to remedy the condition which caused the cracks and were given his name; were advised of the steps taken to correct the situation which the sellers believed existed; consulted about the cracks

with their own representative whom they trusted would not let them buy a house which did have soil problems, and thereafter purchased the house without any further attempt on their part to determine if soil problems were present. The only knowledge which plaintiffs charged defendants with having concerning the soil condition was that told defendants by the engineer they had employed. The opportunity to consult the engineer for more definite knowledge of the soil condition was made available to plaintiffs but they failed or neglected to seek that knowledge.

On this state of the record the trial court found that the buyers were themselves put on notice and were negligent in not pursuing their inquiries further. We cannot say that such finding is not supported by the evidence. Circumstances surrounding the transaction here were such as to alert the suspicion of the buyers as to the condition of the soil and reasons for the cracks, and the representations, even if false, being innocently made, equity will not relieve the buyer from the consequences of his inattention and negligence in failing to pursue his investigation, 61 A.L.R. 493, 1 Black, *Rescission and Cancellation,* 348, §113 (2nd ed.), 23 Am. Jur. *Fraud and Deceit,* §155, p. 960, ff.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE MCWILLIAMS concur.