**M.D.C./WOOD, INC., a Colorado corpora-tion, formerly known as Wood Bros. Homes, Inc., Petitioner,**

v.

**Gary MORTIMER, Catherine L. Mortim-er, Jayesh P. Patel, Bakula Patel, Den-nis J. Perret, Clarice J. Perret, Deborah M. Klee, David J. Klee, and Howard P. Jones, Respondents.**

No. 93SC67.

Supreme Court of Colorado,
En Banc.

Jan. 24, 1994.

Rehearing Denied Feb. 14, 1994.

Holley, Albertson & Polk, P.C., Scott D. Albertson, Dennis B. Polk, Golden, for peti-tioner.

Pickard & Associates, P.C., Joe Pickard, Denver, for respondents.

Justice ERICKSON delivered the Opinion of the Court.

This suit in equity, predicated upon fraud, was commenced to obtain rescission of the sale of residential real estate to Gary and Catherine Mortimer; Jayesh and Bakula Pa-tel; Dennis and Clarice Perret; Deborah and David Klee; and Howard P. Jones (collec-tively the respondents), by M.D.C./Wood, Inc., formerly Wood Brothers Homes, Inc. (Wood Brothers). The trial judge made ex-tended findings of fact, and based on those findings, denied the respondents' claim for rescission and entered judgment in favor of Wood Brothers. On appeal, the case was reversed and remanded to the trial court with directions to grant rescission. *Mortim-er v. M.D.C./Wood, Inc.*, 854 P.2d 1307 (Colo. App.1992). We granted certiorari and re-verse and remand to the court of appeals

with directions to reinstate the judgment entered by the trial court.

## I

The respondents purchased single-family residences from Wood Brothers. The homes were located in southern Jefferson County in the Alkire Acres Subdivision, known as Woodlane. The respondents contracted to purchase the residences between January and August of 1986 and each of the respondents purchased their residence by October of 1986. After the real property was purchased by the respondents, the Colorado Department of Highways began construction of an extension of Highway C–470 between Belleview Avenue and Bowles Avenue, in Jefferson County. The extension is west of Alkire Street and east of the Dakota Hogback (hogback), which is a well-known landmark.

In the fall of 1988, the Highway Department began surveying and staking for construction of Highway C–470. Although the respondents were aware that Highway C–470 was going to be extended, they claimed that a Wood Brothers' sales agent had represented that the highway was going to be constructed in a different location. In November of 1989, the respondents notified Wood Brothers of their intent to rescind the contracts that culminated in the purchase of the respondents' residences.

The respondents brought suit against Wood Brothers for fraud claiming the right to rescind their purchase of residential property. The respondents contend that Jim Sablan (Sablan), an agent of Wood Brothers, stated that Highway C–470 would be constructed along the hogback and not in close proximity to Woodlane, where it was eventually constructed. During the trial, a large aerial photograph was admitted as evidence. The aerial photograph accurately reflected the future location of Highway C–470 with bright yellow tape. The yellow tape on the aerial photograph indicated that Highway C–470 would be adjacent to Woodlane and not along the hogback as Sablan represented. The aerial photograph was on display at Wood Brothers' sales office prior to and at the time the respondents purchased their homes. All of the respondents had seen the aerial photograph prior to the purchase of their property.

At the conclusion of the bench trial, the court denied rescission based in part on finding that the verbal representations made by Sablan conflicted with the aerial photograph and other evidence. The trial court, after hearing the testimony of the witnesses found that the respondents were aware of the conflict and thus could not reasonably rely on Sablan's representations:

> The [respondents] have established a prima facie case for rescission, based on [Wood Brothers's] fraud and should be entitled to the relief sought unless [some] defense asserted by [Wood Brothers] precludes recovery.... [The court] concludes, as a matter of law, that all [defenses] should be denied except that defense of [Wood Brothers's] disclosure of the correct route of the highway and the duty of [the respondents], given the difference between Sablan's statements and the representations made by the aerial map, to make further inquiry.

One of the trial court's findings was that the depiction of Highway C–470 on the aerial photograph was "highly visible" and "could not have been overlooked by anyone giving cursory attention to the map." The trial court, therefore, charged the respondents with knowledge of the facts displayed on the aerial photograph and concluded that they did not have the right to rely on Sablan's false representations.

The court of appeals acknowledged that the question of a person's right to rely on the statements of another is usually a question of fact and, if supported by the evidence, is binding on appeal. *Mortimer,* 854 P.2d at 1309. Nevertheless, the court of appeals stated that, "when as here, credibility and demeanor are not involved but the facts are presented in the form of an aerial photograph which this court is able to review as well as the trial court, we may draw our own conclusions from the evidence." *Id.* In reversing the trial court, the court of appeals concluded:

[T]here is no record support for the trial court's finding that the [respondents] had a duty to inquire further solely because of the existence of the aerial photograph. The photograph does not convey information that would have caused reasonable persons to question the accuracy of [Sablan's] representations. Hence, since the [respondents] had the right to rely upon such representations, the trial court erred in denying [the respondents'] claim for rescission.

*Id.* at 1310.

Because the court of appeals substituted its factual findings for those of the trial court, we reverse the court of appeals.

## II

■ To establish fraud, the respondents had to prove that: (1) a fraudulent misrepresentation of material fact was made by Wood Brothers; (2) the respondents relied on the misrepresentations; (3) the respondents have the right to rely on, or were justified in relying on, the misrepresentation; and (4) the reliance resulted in damages. *See Zimmerman v. Loose,* 162 Colo. 80, 425 P.2d 803 (1967); *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937). If the respondents have access to information that was equally available to both parties and would have led to the true facts, the respondents have no right to rely upon the false representation. *Cherrington v. Woods,* 132 Colo. 500, 290 P.2d 226 (1955); *see also* 1 George F. Palmer, *Law of Restitution* § 3.19, at 350–51 (1978) (a defendant may not have the right to rely on a misrepresentation when "he could have learned the truth by reasonable inquiry") (citing *Van Metter v. Bent Const. Co.,* 46 Cal.2d 588, 297 P.2d 644 (1956)). Whether a person seeking rescission of a contract has a right to rely on the misrepresentation is a question of fact and is binding on appeal if supported by the evidence. *Bassford v. Cook,* 152 Colo. 136, 380 P.2d 907 (1963); *see also Lempert v. Singer,* 766 F.Supp. 1356, 1366 (D.V.I.1991) (holding a contract is voidable if the plaintiff is justified in relying on the misrepresentation); *Hagar v. Mobley,* 638 P.2d 127, 132 (Wyo.1981) (stating that the false representation must be made to induce

action and the plaintiff must reasonably believe it to be true). It is only when facts are presented to the trial court by stipulation, or uncontested documentary evidence, that an appellate court may draw its own conclusions. *Jelen & Son, Inc. v. Kaiser Steel Corp.,* 807 P.2d 1241 (Colo.App.1991); *Werner v. Baker,* 693 P.2d 385 (Colo.App.1984).

■ The court of appeals stated that the trial court's findings of fact were not binding because: (1) the sole basis for the trial court's factual findings was the existence of the aerial photograph; and (2) credibility and demeanor were not involved in the determination. *Mortimer,* 854 P.2d at 1308, 1309. The aerial photograph was not the sole basis for the trial court's decision. The trial court considered the credibility and demeanor of the witnesses as well as other documentary evidence. Therefore, the court of appeals erred when it substituted its own factual findings for those of the trial court.

In holding that it was not bound by the trial court's findings of fact, and in conducting an independent review of the findings of fact, the court of appeals relied on *Jelen* and *Werner. Mortimer,* 854 P.2d at 1309. This case, however, is unlike *Jelen* and *Werner.* In *Jelen* and *Werner,* all of the facts relied on by the trial court were presented by stipulation and documentary evidence. In *Jelen,* the court of appeals stated: "If, as here, the facts are presented to the trial court by stipulation and documentary evidence, a reviewing court may draw its own conclusions from the evidence." *Jelen,* 807 P.2d at 1244. Similarly, in *Werner,* the court of appeals held: "When, as here, the facts are presented to the trial court by stipulation, deposition, and other documentary material, a reviewing court may draw its own conclusions from the evidence." *Werner,* 693 P.2d at 387. In both cases, no evidentiary hearings were held, no witnesses testified, no contradictory evidence was presented, and the trial court was not required to assess the weight of the evidence or consider the credibility of witnesses.

Here, however, there was testimony from twenty-three witnesses, including the nine respondents. The trial court weighed all the

evidence, considered the credibility of the witnesses, and found that the respondents were not entitled to rely on Sablan's misrepresentations.

Some of the respondents testified that the aerial photograph portrayed a different location for Highway C–470 than that represented by Sablan. Other respondents testified that they saw the aerial photograph but paid no attention to it, and some testified that they specifically examined the aerial photograph's demarcation of the proposed highway. As the trier of fact, the trial judge was required to weigh the credibility and demeanor of the witnesses to determine if the respondents had a reasonable right to rely on Sablan's misrepresentations or if the aerial photograph required the respondents to inquire into Sablan's representations:

> The requisite that the representation must be relied upon, plainly includes the supposition that the party is justified, under all the circumstances, in thus relying upon it. This branch of the rule presents by far the greatest practical difficulties in the decision of cases, because, although the rule is well settled, and is most clearly just, *its application must depend upon the facts of each particular case, and upon evidence which is often obscure and conflicting in determining the effect of a reliance upon representations.* It is most important to ascertain, in the first place, whether the statement was such that the party was justified in relying upon it, or was such, on the other hand, that he was *bound* to inquire and examine into its correctness himself. In respect to this alternative, there is a broad distinction between statements of fact which really form a part of, or are essentially connected with, the substance of the transaction, and representations which are mere expressions of opinion, hope, or expectations, or are mere general commendations.

3 John Norton Pomeroy, Equity Jurisprudence § 891 (5th ed. 1941) (emphasis added); *see also Zimmerman*, 162 Colo. at 80, 425 P.2d at 803 (stating that no right to rely on a representation exists if another person of similar intelligence, education, or experience would not have relied on the representation).

In addition, the trial court received substantial documentary evidence and testimony as to the location of Highway C–470 in title commitments obtained by two of the respondents. Respondents Mortimer and Patel each was given a zoning map, and an amendment to the zoning map, which disclosed the proposed right-of-way for Highway C–470. The map and the amendment were admitted into evidence. Testimony by Leonard Mongo, the Director of Planning for Jefferson County, established that the zoning maps reflected that Highway C–470 was approximately 400 feet from Woodlane.

The record also contains evidence regarding the availability of public records establishing the location of the highway. Joseph Temple, an Environmental Manager for the Colorado Department of Highways, stated the C–470 Design Report was a public document that could have been obtained by the respondents if they had made a request. The trial judge stated:

> [The respondents] could have made further inquiry from Jefferson County or the State Highway Department. Even looking at the plat of the subdivision would have shown the location of the highway. In the [sic] light of the great importance each [respondent] stated was attached to this fact, it is difficult to understand why no inquiry ... was made by any of them.

Because the factual findings of the trial judge were not based solely on the existence of the aerial photograph, and the trial judge was required to weigh the credibility and demeanor of witnesses in determining whether the respondents had a reasonable right to rely on Sablan's misrepresentations, the factual findings are binding unless they are so clearly erroneous as not to find support in the record. *Briano v. Rubio*, 141 Colo. 264, 347 P.2d 497 (1959).

### III

The court of appeals erred in substituting its findings of fact for those of the trial court. In *Page v. Clark*, 197 Colo. 306, 313, 592 P.2d 792, 796 (1979), we said:

> We have consistently disapproved of the substitution of new factual findings by re-

viewing courts for those made by the trial court. *See Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970). The findings of the trier of fact must be accepted on review, unless they are so clearly erroneous as not to find support in the record. *Briano v. Rubio*, 141 Colo. 264, 347 P.2d 497 (1959). The sanctity of trial court findings is derived from the recognition that the trial judge's presence during the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court. *See Baumgartner v. Tweedy*, 143 Colo. 556, 354 P.2d 586 (1960). The testimony of the parties was contradictory on almost every material point in controversy. It is impossible to determine from the bare pages of the record whose testimony should be given credit relating to the facts. In such cases, the difficult task of finding those facts is best left to the trial court.

The trial court found that the photograph, among other indicia, created a duty for the respondents to inquire further into the location of Highway C–470. With respect to the aerial photograph, the trial court specifically found that the photograph had been prominently displayed, that an inspection of the photograph would have shown the discrepancy between Sablan's representations and the actual location of Highway C–470, and that each of the respondents admitted to looking at the photograph. The trial court stated:

> Defendant appears not to have ... sought to mislead potential buyers of it[s property]. It posted in its sales office an aerial map of the area, showing the precisely the proposed location of the highway in relation to Alkire Street and the subdivision.... The map was of large size, the location of the highway was conspicuously shown.... It could not have been overlooked by anyone giving even cursory attention to the map.

Even though the trial court made specific findings regarding the photograph and other evidence, the court of appeals held that the "photograph does not convey information that would have caused reasonable persons to question the accuracy of the defendant's representations," and "[n]or do we agree that the aerial photograph is readily understandable to lay persons unfamiliar with aerial maps or photographs." *Mortimer*, 854 P.2d at 1310. The court of appeals, however, recognized that the trial court had made a finding of fact when it stated, "there is no record support for the trial court's *finding* that the plaintiffs had a duty to inquire further." *Id.* (emphasis added). The court of appeals reversal of the trial court's findings of fact and the substitution of new findings of fact is not consistent with *Page v. Clark*.

The findings of the trial court are supported by the record and the court of appeals erred in substituting its findings for those of the trial court.

### IV

Accordingly, we reverse and remand to the court of appeals with directions to reinstate the judgment entered by the trial court.