F.D. LODEN and Kay L. Loden, Plaintiffs–Appellants,

v.

Lois J. DRAKE; Ralph Richard Smith; and Eleda M. Smith, Defendants–Appellees.

No. 93CA0997.

Colorado Court of Appeals, Div. III.

Aug. 11, 1994.

Darrow and Helmsing, Gregg Helmsing, Delta, for plaintiffs-appellants.

F. Lynn French, Crawford, for defendants-appellees.

Opinion by Judge KAPELKE.

In this breach of contract action involving the purchase of a business known as the Needle Rock Inn, the plaintiffs, F.D. and Kay L. Loden (the sellers), appeal from the judgment entered in favor of the defendants, Lois J. Drake, Ralph Richard Smith, and Eleda M. Smith (the buyers). We affirm.

I.

The sellers contend that the trial court erred in ruling that the buyers were obligated to accept only the portion of the liquor inventory for which the sellers were able to produce wholesaler invoices. We disagree.

Retail liquor store licensees, as well as hotel and restaurant licensees, are required to purchase their liquor from licensed wholesalers. See §§ 12-47-116 and 12-47-119, C.R.S. (1991 Repl.Vol. 5B). Each such liquor licensee is required "to keep a complete set of invoices ... necessary to show fully the business transactions of such licensee." Section 12-47-109, C.R.S. (1991 Repl.Vol. 5B).

In the event such a licensee cannot demonstrate from records that its liquor purchases are from a licensed wholesaler, the liquor enforcement division of the Colorado Department of Revenue might confiscate the liquor, and, in the event of a statutory violation, the licensee might be subject to license suspension or revocation. See § 12-47-110(1), C.R.S. (1991 Repl.Vol. 5B).

Here, the record supports the trial court's finding that the sellers failed to provide purchase documentation as to liquor inventory in the amount of $6275.04. Under the circumstances, the trial court did not err in concluding that this failure constituted a breach of the implied warranty of merchantability under § 4-2-314, C.R.S. (1992 Repl.Vol. 2), entitling the buyers to reject the undocumented portion of the liquor inventory.

The sellers argue that any breach of the implied warranty of merchantability should have been disregarded because the buyers could have obtained copies of invoices directly from the wholesalers. In essence, the sellers argue that a claim under § 4–2–314 is barred whenever a buyer is in a position to remedy a defect in the merchantability of goods. This argument is without merit, however, since the purpose of the implied warranty is to allocate to the *seller* the risk of loss stemming from defects which render goods unmerchantable.

Also without merit is the sellers' argument that, under § 4–2–316(3)(b), C.R.S. (1992 Repl.Vol. 2), there was no implied warranty of merchantability because the buyers inspected the inventory prior to closing.

Section 4–2–316(3)(b) provides that a buyer's examination of goods negates an implied warranty of merchantability only if the circumstances are such that the examination ought to have revealed the defects. Here, the inspection of the inventory itself would not have revealed the defect affecting merchantability. Therefore, the trial court properly found that the implied warranty of merchantability was not excluded by reason of the inspection.

## II.

■ The sellers next contend that the trial court erred in ruling that the buyers were not obligated to pay a three-cent-per-gallon surcharge under a fuel services agreement they had assumed under the sale contract. We disagree.

Under the sale contract, the buyers agreed to assume a fuel services agreement that the sellers had entered into with a petroleum company approximately two years earlier when they purchased fuel pumps and storage tanks for the Inn. The sellers failed to provide the buyers with a copy of the fuel services agreement, however, and affirmatively represented to them that the agreement included a three-cent-per-gallon surcharge as a fee to compensate the petroleum company for maintaining the fuel equipment at the Inn. This statement was erroneous because, under the fuel service agreement, the sur-

charge was in fact not for maintenance but rather for interest owed to the petroleum company for financing the sellers' purchase of the fuel equipment.

■ The general rule is that a person may be relieved of a contractual obligation if it is shown that he or she was damaged by justifiably relying on a misrepresentation of a material fact. *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937).

The sellers assert that this standard was not met because their misrepresentation was not material and, alternatively, because the buyers' reliance on the statement was not reasonable. There is, however, evidence in the record to support the trial court's conclusion as to misrepresentation, materiality, and reasonable reliance.

■ Moreover, a finding of justifiable reliance was not precluded because of the buyers' failure to read the fuel services agreement. Although one generally cannot avoid contractual obligations by claiming that he or she did not read the agreement, this rule does not bar recovery in a case such as this in which the other party has misrepresented or concealed the terms of the contract. *See* *O'Brien v. Houston*, 83 Colo. 109, 262 P. 1020 (1927); 3 A. Corbin, *Contracts* § 607, at 666–69 (1960). Under such circumstances, a court may determine, as did the trial court here, that a plaintiff's reliance was justifiable.

It is also significant here that the buyers were not signatories to the fuel service agreement itself and that the sellers did not provide them with a copy of the document before the closing.

■ Since there is evidentiary support for the trial court's findings regarding materiality and reliance, the determinations of those issues are binding on appeal. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380 (Colo. 1994).

## III.

■ The sellers also contend that the trial court erred in ruling that they were obligated under the sale contract to make additional repairs to the Inn's septic system. Specifically, they argue that the failure of the sys-

tem was caused by an unanticipated expansion of the Inn's business and the buyers' discharge of excessive amounts of water. We perceive no basis for disturbing the trial court's ruling.

The septic system had a problem with surfacing effluent. At the time of closing, the sellers agreed to have the system in a condition acceptable to the county health department by June 15, 1992. The sellers then obtained from the county health department an estimate of the Inn's daily water usage during the month of May, and they installed a system designed to accommodate the anticipated discharge. The installation of the new system did not eliminate the surfacing problem, and a short time after the installation the sellers discovered there was an excessive water flow from facilities in the Inn.

At trial, the buyers testified that the system continued to allow effluent to surface even after the excessive water flow had been eliminated. A health department officer testified that the design of the new system had an inadequate capacity because it was based on an erroneous estimate of water usage in May and also failed to account for the Inn's peak water demand during the hunting season. In our view, this evidence adequately supports the trial court's conclusion that the sellers breached their obligation regarding repair of the septic system.

The judgment is affirmed.

PLANK and JONES, JJ., concur.