Cory B. NIELSON and Jong OK Nielson, Plaintiffs–Appellants and Cross–Appellees,

v.

Murrill Thomas SCOTT and Sue Ann Scott, Defendants–Appellees and Cross–Appellants.

No. 01CA0627.

Colorado Court of Appeals, Div. II.

April 11, 2002.

Certiorari Denied Sept. 16, 2002.

Robert M. Noone, P.C., James H. Delman, Robert M. Noone, Glenwood Springs, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

William J. deWinter III, P.C., William J. deWinter, Glenwood Springs, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge WEBB.

Plaintiffs, Cory B. Nielson and Jong OK Nielson (buyer or buyers), appeal the trial court's grant of summary judgment in favor of defendants, Murrill Thomas Scott and Sue Ann Scott (seller or sellers), on buyers' fraud and concealment claims. Sellers cross-appeal the trial court's refusal to award them attorney fees. We affirm.

This action involves buyers' April 1, 1997, purchase from sellers of real property known as the Viking RV park in Silt, Colorado. The following facts are undisputed.

On the first visit to the RV park in late 1996, buyer smelled sewage and noticed standing water over the leach field of the septic system. Discussion with seller resulted, during which buyer was told this situation existed because the septic system needed to be enlarged, but enlargement would be relatively easy and cost only about $15,000. Further, seller told buyer the septic system would be fine thereafter.

In early January 1997, buyers' real estate agent submitted the first of four written offers to sellers. In connection with their purchase of the RV park, buyers were represented by an attorney from January 13, 1997, through mid-February 1997. Attorney submitted the next two offers. The first three offers contained provisions that made sellers responsible for remedying problems with the septic system. Sellers rejected all three offers.

During the time that sellers dealt with buyers prior to the sale, sellers had not obtained from the Colorado Department of Health Water Quality Control Division (WQCD) a groundwater discharge permit for the RV park, although they had submitted a permit application in 1995. Hence, the RV park was not in compliance with WQCD standards at the time of the sale.

Sellers never told buyers anything about the need for a permit. Nor did sellers turn over to buyers documents concerning their prior dealings with WQCD, despite buyers having broadly requested all documents pertaining to the RV park as part of their due diligence. After having closed the purchase, buyers learned that compliance would be very costly, probably requiring either connection to the sewage disposal system of the Town of Silt or construction of an individual sewage disposal plant for the RV park.

Buyers' attorney testified that he suggested buyers hire an engineer whom the attorney knew to be familiar with septic and sewer system issues. The engineer had expressed concerns to the attorney about the need to obtain a permit and site approval for expansion of the septic system, along with associated costs and problems. Buyers met with the engineer, but chose not to hire him.

Sellers' counsel referred the attorney to an official with WQCD and provided the attorney with a permit application number, which the attorney found to be inaccurate. Based on his ensuing telephone conversation with the WQCD official, the attorney was aware that: the state had a policy requiring permits, and the RV park might have problems obtaining a permit; the RV park had submitted a permit application in 1995; the official

was "suspicious" that the RV park was "not in compliance with state standards"; WQCD contemplated inspecting the RV park late in the summer of 1997; and WQCD would likely impose significant requirements on the RV park so it would comply with state law.

The attorney thought that his conversation with the WQCD official raised a number of "red flags." He was concerned about potentially significant unresolved issues pertaining to the septic system, relating to both expanding the existing system and otherwise complying with WQCD or county regulations. The attorney understood that, absent an agreement between the parties, if buyers purchased the RV park WQCD would look to them for any future remedial action required by WQCD concerning the septic system.

The attorney deposed did not represent buyers when they made their fourth and final offer, at which time they were without counsel. Sellers accepted this offer, and the parties entered into a contract dated April 1, 1997.

In the contract, buyers acknowledged that their due diligence inspection, including "any environmental matters ... and any matters relating to water and sewage," had been "completed to [their] satisfaction," and that the septic system expansion had not been completed. The contract also contained the following paragraph:

5. *Disclaimer.* Buyer acknowledges and agrees that Seller has not made any representations, warranties or guaranties of any kind concerning (a) the condition of the Property, .... Buyer further acknowledges and agrees that: (i) Seller has advised Buyer to obtain an expert third party inspection of the physical condition of the Property, (ii) Buyer will rely solely on Buyer's own investigation of the Property and (iii) Seller is not liable or bound in any manner by any oral or written statements, representations or information pertaining to the Property furnished by any real estate broker, agent, employee, or other person. Buyer further acknowledges and agrees that to the maximum extent permitted by law, the sale of the Property is made on an "AS IS" condition and basis with all faults....

After the sale closed, buyers filed this action alleging that sellers had fraudulently misrepresented that problems with the septic system could be remedied by the expansion. Buyers further alleged that sellers had concealed the facts that the septic system lacked a permit and was not in compliance with WQCD regulations.

The trial court granted sellers' motion for summary judgment as to both claims. The trial court denied sellers' request for attorney fees under § 13–17–101, C.R.S.2001.

### I.

Buyers contend that summary judgment was improper because of disputed factual issues. The trial court concluded that, although the parties offered different interpretations, the material facts as set forth above were not in dispute. We agree with the trial court.

We review of a trial court's decision to grant summary judgment de novo. Summary judgment is appropriate only if the pleadings and supporting documents demonstrate no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to establish that no genuine issue of material fact exists; any doubts should be resolved against the moving party. *See Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Bd.,* 901 P.2d 1251 (Colo.1995).

█ The elements of fraudulent concealment are: (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *See Kopeikin v. Merchants Mortgage & Trust Corp.,* 679 P.2d 599 (Colo.1984).

█ The elements of fraudulent misrepresentation are: (1) a fraudulent misrepresentation of material fact; (2) the plaintiffs' reliance on the material representation; (3) the

plaintiffs' right or justification in relying on the misrepresentation; and (4) reliance resulting in damages. *See M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380 (Colo.1994).

■ Common to both fraudulent concealment and fraudulent misrepresentation is the element of reliance on either the false representation or the assumption that the concealed fact does not exist. *See, e.g., Black v. First Federal Savings & Loan Ass'n,* 830 P.2d 1103 (Colo.App.1992), *aff'd sub nom. La Plata Medical Center Associates, Ltd. v. United Bank,* 857 P.2d 410 (Colo.1993); *Soneff v. Harlan,* 712 P.2d 1084 (Colo.App. 1985).

Here, buyers' claims fail because the undisputed evidence shows either they knew of the WQCD issues and other problems with the septic system or they had sufficient notice of problems with the septic system that they should have conducted an investigation, which would have disclosed the WQCD issues.

### A.

■ Generally, knowledge of an attorney is imputed to the client if that knowledge was obtained in the course of the particular transaction for which the attorney was employed by the client. *See Bunnell v. Holmes,* 64 Colo. 345, 171 P. 365 (Colo.1918). *See also* Restatement (Second) of Agency § 275 (1958)(principal is treated as having all knowledge that agent has duty to disclose). Buyers do not assert that the attorney acted in collusion with sellers or otherwise adversely to their interests.

■ The information concerning the septic system and its regulatory status obtained by the attorney clearly related to his representation of plaintiffs and therefore is imputed to them. *See Bunnell v. Holmes, supra.* Thus, buyers must be deemed to have had knowledge of the WQCD issues concerning the septic system before they purchased the RV park. The attorney's knowledge is imputed to them even though they later proceeded without counsel when making their final offer. *See* Restatement (Second) of Agency § 275 cmt. e (1958).

### B.

■ If the circumstances surrounding a transaction would arouse a reasonable person's suspicion, then equity will not relieve a party from the consequences of inattention and negligence in failing to pursue an investigation. *See Bassford v. Cook,* 152 Colo. 136, 380 P.2d 907 (1963).

Here, even if the attorney's knowledge did not completely illuminate the alleged misrepresentation concerning the septic system and concealment of its regulatory problems, we conclude the information obtained by the attorney clearly showed a need for further investigation. In addition, buyers spoke to the engineer recommended by the attorney. Under the contract, buyers were again advised to use an expert to inspect the RV park, and they agreed to rely "solely on [their] own investigation."

Buyers should have acted on the information that the attorney obtained by investigating thoroughly. Hence, they are charged with all knowledge that they might have obtained about the RV park if they had pursued an investigation with diligence and completeness. *See Taylor v. Arneill,* 129 Colo. 185, 268 P.2d 695 (1954). *See also Cherrington v. Woods,* 132 Colo. 500, 290 P.2d 226 (1955). Given the volume of information that the WQCD official provided to the attorney in a single telephone call, and WQCD's status as a public agency, we conclude that a thorough investigation would have disclosed the alleged misrepresentation and concealment of which plaintiffs complain.

Accordingly, the trial court's summary judgment order dismissing the fraud and concealment claims is affirmed.

### II.

Sellers cross-appeal the trial court's denial of their request for attorney fees. Citing § 13–17–101, the trial court concluded that buyers' suit was not frivolous and denied the request. We perceive no abuse of discretion by the trial court.

■ A trial court's decision whether to award attorney fees under this statute is discretionary and will not be disturbed on

appeal if the evidence supports the ruling. *See Fasing v. LaFond,* 944 P.2d 608 (Colo. App.1997). We conclude that the trial court did not abuse its discretion in denying attorney fees on the grounds stated.

For the first time on appeal, sellers also claim that they are entitled to attorney fees pursuant to the contract. Generally, a party may not raise an issue for the first time on appeal. *See Matthews v. Tri–County Water Conservancy Dist.,* 200 Colo. 202, 613 P.2d 889 (1980). Therefore, we will not address sellers' claim for attorney fees under the contract.

The judgment is affirmed.

Judge PLANK and Judge JONES concur.